IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SUMINDRA TIMILSINA and<br>DIPIKA PANDAY,<br><br>Plaintiffs,<br><br>VS.<br><br>TONY BRYSON, District Director of<br>USCIS Dallas Field Office, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§      Civil Action No. 3:22-CV-1327-D |

MEMORANDUM OPINION
AND ORDER

A married couple challenges the denial of the U.S. citizen husband's I-130 Petition

for Alien Relative on behalf of the alien wife, based on claims for violation of due process,

judicial review of agency action under the Administrative Procedure Act ("APA"), and

habeas corpus.  On cross-motions for summary judgment, the court denies plaintiffs' motion,

grants defendants' motion, and enters judgment in favor of defendants, dismissing this action

with prejudice.

I

Plaintiffs Sumindra Timilsina ("Timilsina") and Dipika Panday ("Panday"), a married

couple, sue defendants Tony Bryson, Ur Jaddou, Alejandro Mayorkas, Merrick Garland, U.S.

Citizenship and Immigration Services, U.S. Department of Homeland Security, and U.S.

Department of Justice (collectively, "CIS"), challenging a decision of the Board of

Immigration Appeals ("BIA") that denied Timilsina's I-130 Petition for Alien Relative filed

on Panday's behalf on marriage-fraud grounds.

Panday is a citizen of Nepal who first came to the United States in 2005 on an F-1 Student Visa.  In March 2012 Panday married Joshua Stover ("Stover"), a United States citizen.  Stover filed an I-130 Petition for Alien Relative on Panday's behalf in 2012, seeking to classify her as his wife for immigration purposes.  Panday concurrently filed Form I-485, Application to Register Permanent Residence or Adjust Status, seeking to become a Permanent Resident of the United States based on her marriage to Stover.

In August 2012 CIS officers interviewed Stover and Panday in connection with the I-130 Petition and I-485 Application.  While being questioned separately, Stover admitted that his marriage to Panday was not real, that the marriage had never been consummated, that the two had never been romantic in any way, that they had never lived together, and that they had never been anything more than friends.  Stover stated that he had married Panday because he had a crush on her and hoped that one day the marriage would become romantic. A few minutes later, Stover repeated this information to a second CIS officer and handwrote a statement that read:

> I Josh Stover hereby state the following
>
> 1.    Marriage was never real, never consamated [sic] the marriage.
> 2.    I was never paid.
> 3.    I really wanted it to work & wanted a family so I married her to make my family proud.
> 4.    She was living w[ith] a friend & not me.
> 5.    I don't [sic] want to name the friend she is living w[ith]

R. 125.  After the interview, Stover withdrew the I-130 Petition.  CIS acknowledged the

- 2 -

withdrawal and denied the Petition and the I-485 Application.  Panday maintains, however, that her marriage to Stover was not fraudulent.

Stover and Panday divorced in June 2013.  In July 2015 Panday filed Form I-821, Application for Temporary Protected Status.  While reviewing that Application, CIS issued Panday a Request for Additional Evidence, which required her to submit Form I-601, Application for Waiver of Ground of Inadmissibility, on the basis that she had willfully misrepresented a material fact to gain an immigration benefit during the August 2012 interview, which would have rendered her inadmissible under § 212(a)(6)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(C)(i).  Although Panday maintained that her marriage to Stover was not fraudulent, she complied and submitted supporting evidence.  Her I-821 Application was later approved, and she received Temporary Protected Status, which she still holds.

In September 2016 Panday married Timilsina, a United States citizen.  In October 2016 Timilsina filed an I-130 Petition on Panday's behalf.  CIS officers interviewed the couple in September 2018.  In December 2018 CIS issued a Notice of Intent to Deny ("NOID") Timilsina's I-130 Petition for the following reasons:

- On the I-130 petition (MSC1290771826) the forms G-325A for the beneficiary and previous petitioner, as well as during the interview on August 20, 2012 both Joshua Stover and the beneficiary claimed to be living together at the address 2609 Featherstone Road, Apt 519, Oklahoma City, Oklahoma.  Later in the interview, the previous petitioner admitted that he and the beneficiary were not living together and had never lived together.

● The addresses listed on the 2011 W-2 statements for the beneficiary and petitioner are not consistent with the address used on the 2011 joint IRS tax form l040A or Oklahoma state tax form 551.  Additionally the tax forms submitted are unsigned and there is no indication the documents were filed with the respective federal and state government entities.  This further supports the claim that the beneficiary and petitioner were not living together while they claimed to be married.

● The address listed on the AT&T account statement (700 NE 122nd Street, Oklahoma City, Oklahoma) is not consistent with the address where the beneficiary and previous petitioner claimed to be living at the time of filing the I-130 and at the time of the interview.  This further supports the claim that the beneficiary and petitioner were not living together while they claimed to be married.

● During the interview on August 20, 2012, when asked how they met, Joshua Stover stated they met through mutual friend Andrea (no last name given) in August or September 2009.  The beneficiary stated they met in July 2009.

● When asked to describe what she and the previous petitioner did on the Friday prior to the interview on August 20, 2012, the beneficiary stated that she went to work from 7:30 AM to 5:30 PM, returned home to watch television and went to sleep at 10 PM.  She stated the petitioner worked from 4:00 PM to 11:30 PM.  She also stated that she was woken up by the petitioner returning home at 11:30 PM, but did not speak to him.  Joshua Stover stated that he went to work at 11:30 AM and worked the bar shift until 10 - 10:30 PM when he returned home.  He further stated that when he returned home the beneficiary "hung out" with him sitting on the couch and they discussed what happened in each other's day.

● During the interview with CIS Officers the previous petitioner requested to withdraw the petition filed on behalf of the beneficiary and admitted that the marriage was never real.  In addition, the previous petitioner admitted he and the beneficiary had never lived together, that the marriage was never consummated and that the beneficiary had actually lived with a

- 4 -

friend while attempting to adjust status through the marriage
with him.

R. 464-65.  The NOID provided Timilsina the opportunity to respond and submit evidence.

Timilsina responded with a legal brief and additional evidence, including a then-current

affidavit by Panday and an affidavit that Panday had submitted with the I-601 Application

in 2015.

CIS denied Timilsina's I-130 Petition in February 2019, finding that the Petition was

barred by 8 U.S.C. § 1154(c).  The denial considered the evidence that Timilsina had

submitted but also noted significant discrepancies in the record, ultimately concluding that

Timilsina had not met his burden of proving that the previously claimed marriage between

Stover and Panday was bona fide.  Timilsina appealed CIS's decision to the BIA, which

affirmed, finding that CIS's decision was based on substantial and probative evidence and

that the evidence established that it was more than probably true that Panday's marriage to

Stover was fraudulent.

Plaintiffs then filed this lawsuit, asserting claims for (1) violation of due process; (2)

judicial review of agency action under the APA, 5 U.S.C. §§ 701, *et seq.*; and (3) habeas

corpus.  The parties have filed cross-motions for summary judgment, which the court is

deciding on the briefs.

II

When a summary judgment movant will not have the burden of proof on a claim at

trial, it can obtain summary judgment by pointing to the absence of evidence on any essential

- 5 -

element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his or her pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen LandCare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

On the other hand, when the summary judgment movant will have the burden of proof on a claim, the movant "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

- 6 -

When both sides move for summary judgment, the court recounts the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, does so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e. g.*, *GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) ( Fitzwater, J.)).

The general "genuine dispute of material fact" standard for summary judgment does not apply to APA claims. *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F.Supp.2d 1077, 1084 (E.D. Cal. 2011).  Instead, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Redeemed Christian Church of God v. USCIS*, 331 F.Supp.3d 684, 694 (S.D. Tex. 2018) (Rosenthal, C.J.) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).  In this context, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (quoting *Stuttering Found. of Am. v. Springer*, 498 F.Supp.2d 203, 207 (D.D.C. 2007)).

III

The court turns first to plaintiffs' claims under the Fifth Amendment Due Process Clause.  Because it is unclear whether plaintiffs are alleging a procedural or substantive due process claim, the court will address each.

- 7 -

A

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). But due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances"; instead, it is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (citations omitted).

Here, neither plaintiff has a valid procedural due process claim. Panday cannot bring such a claim because a beneficiary of an I-130 Petition "has no protected property interest in a visa application." *Siddhantam v. Sessions*, 2018 WL 4053366, at *5 (N.D. Tex. Aug. 24, 2018) (Scholer, J.); *see also Kerry v. Din*, 576 U.S. 86, 100-01 (2015). Timilsina does have a protected property interest in the adjudication of his I-130 Petition because approval of an I-130 Petition is a non-discretionary agency decision. *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 276-79 (5th Cir. 2008). But the record establishes that, in any event, Timilsina was afforded procedural protections that comport with due process. Timilsina acknowledges that CIS provided him the NOID listing the discrepancies in the record, and that he was permitted to respond to the discrepancies before his I-130 Petition was denied. Timilsina contends that, because he was not presented until 2018 with the discrepancies from Panday's 2012

interview regarding her marriage to Stover, and thus was only permitted to respond after six years had elapsed, his due process rights were violated because notice of the discrepancies in the record was untimely and thus unreasonable. But, as a practical matter, Timilsina cannot argue that he should have been notified of this information any earlier than 2016, when CIS was considering his I-130 Petition. CIS's action was therefore neither untimely nor unreasonable and gave Timilsina sufficient notice and opportunity to be heard.

B

To prevail on a substantive due process claim, a plaintiff must establish the existence of a legally protected interest. *Conroe Creosoting Co. v. Montgomery Cnty.*, 249 F.3d 337, 341 (5th Cir. 2001). As discussed above, the beneficiary of an I-130 Petition does not have a protected property interest in it, meaning that any substantive due process claim by Panday must fail. And "United States citizen spouses have no constitutional right to have their alien spouses remain in the United States." *Bright v. Parra*, 919 F.2d 31, 34 (5th Cir. 1990) (citing *Anetekhai v. INS*, 876 F.2d 1218, 1222 n.5 (5th Cir. 1989)). Thus Timilsina does not have a viable substantive due process claim.

IV

The court turns next to plaintiffs' APA claim. Under the APA, a denial of a visa application by an immigration agency may be reversed by the district court only if the applicant shows that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) (citing 5 U.S.C. § 706(2)(A)). An agency acts arbitrarily and

capriciously if it

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Brown v. Napolitano*, 391 Fed. Appx. 346, 349 (5th Cir. 2010) (per curiam) (quoting *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998)).  Agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (citations omitted).

Although the district court must ensure that the agency engaged in "reasoned decision-making," the agency is "entitled to considerable deference in its interpretation of the governing statute." *Pasquarell*, 889 F.2d at 1475 (citations omitted).  "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Wilson*, 991 F.3d at 1215.  In reviewing a challenge to an agency's decision, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Luminant Generation Co. v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) (citation omitted).

The court reviews the BIA's factual findings under the substantial evidence test, which "requires only that the BIA's decisions be supported by record evidence and be substantially reasonable." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009) (quoting

- 10 -

*Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002)).  Substantial evidence is "more than a scintilla, but . . . something less than a preponderance of the evidence." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) (quotation marks omitted).

When considering a factual finding of marriage fraud, the court must decide whether substantial evidence supports the BIA's finding that the government met its burden of showing that the marriage "was a sham from its inception." *Brown*, 391 Fed. Appx. at 351; *see* 8 C.F.R. § 204.2(a)(1)(ii).  "Courts have held that a marriage is 'a sham if the bride and groom did not intend to establish a life together at the time they were married.'" *Id.* (quoting *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975)).  "Evidence to establish intent could take many forms, including, but not limited to, proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." *Id.* (quoting *Matter of Laureano*, 19 I. & N. Dec. 1, 2 (BIA 1983)).  "The USCIS is permitted to consider conduct after the marriage, but 'only to the extent that it bears upon their subjective state of mind at the time they were married.'" *Id.* (quoting *Bark*, 511 F.2d at 1202).

In this case, substantial evidence supports the BIA's decision.  Stover admitted to two CIS officers and in a written statement that his marriage to Panday was not real and that their relationship had never been romantic.  Stover's statements were corroborated by documentary evidence showing that Stover and Panday lived at different addresses during the time they claimed to be married and living together.  And inconsistencies in Panday's and

Stover's separate interviews with CIS officers further supported Stover's statements that the couple did not live together, supporting the finding that neither Stover nor Panday subjectively intended to enter into a bona fide marriage at the time they were married. Although Panday did submit evidence and her own affidavit to the BIA disputing Stover's admission, the BIA duly reviewed this evidence and found it insufficient to combat the strong evidence of marriage fraud established by Stover's admission.

Plaintiffs maintain that, because CIS simply allowed Stover to withdraw his I-130 Petition and did not make an official finding of marriage fraud, CIS should not be permitted to maintain now that the Stover-Panday marriage was fraudulent. Plaintiffs essentially contend that CIS is equitably estopped from asserting that the Stover-Panday marriage was fraudulent. But "[c]ourts have been exceedingly reluctant to grant equitable estoppel against the government." *Robertson-Dewar v. Holder*, 646 F.3d 226, 229 (5th Cir. 2011) (citing *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422 (1990)). A party seeking to establish estoppel must prove

> (1) affirmative misconduct by the government, (2) that the government was aware of the relevant facts and (3) intended its act or omission to be acted upon, (4) that the party seeking estoppel had no knowledge of the relevant facts and (5) reasonably relied on the government's conduct and as a result of his reliance, suffered substantial injury.

*Id.* (citing *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997)). Plaintiffs do not present any argument regarding these factors, and their contention that CIS should be estopped from asserting that the Stover-Panday marriage was fraudulent fails.

- 12 -

V

The court turns last to plaintiffs' habeas corpus claim. An individual can seek federal habeas corpus relief under 28 U.S.C. § 2241 if he or she is "in custody" under federal authority. 28 U.S.C. § 2241(c). The custody requirement can be met by showing either "present physical confinement" or a significant restraint on liberty other than physical confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004). In the immigration context, a final deportation order has been deemed to subject an alien to a restraint on liberty sufficient to constitute "custody," but other agency actions, such as an immigration detainer, have not. *See Rosales v. Bureau of Immigr. & Customs Enf't*, 426 F.3d 733, 735 (5th Cir. 2005); *Zolicoffer v. DOJ*, 315 F.3d 538, 541 (5th Cir. 2003).

Here, plaintiffs do not meet the custody requirement for a valid habeas corpus claim because they are neither presently physically confined nor subject to a significant restraint on their liberties. Although plaintiffs allege that the denial of Timilsina's I-130 Petition significantly restrains Panday's liberty by placing her at risk of removal from the country, Panday currently has Temporary Protected Status and is thus not eligible for removal or deportation. Her liberty is therefore not significantly restrained, and plaintiffs' habeas claim fails as a result.

- 13 -

\*   \*   \*

For the reasons explained, the court denies Timilsina's motion for summary judgment, grants CIS's motion for summary judgment, and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

August 25, 2023.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 14 -